UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ADAN MELVIN GALINDO GOMEZ
a/k/a ADAN GALINDO,
    Plaintiff,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

    Defendant.

Case No. 19-cv-3456-ABJ

**REPLY MEMORANDUM IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER VENUE**

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

C. FREDERICK SHEFFIELD
Senior Litigation Counsel

WILLIAM C. BATEMAN III
Trial Attorney, Department of Justice
Office of Immigration Litigation – District Court Section
Tennessee Bar # 034139
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4067
william.c.bateman@usdoj.gov

**INTRODUCTION**

This Court must dismiss Plaintiff's amended complaint ("Compl.") for lack of subject-matter jurisdiction. ECF No. 10. Plaintiff is an alien who unlawfully entered the United States in 1994 and was ordered removed but was granted Temporary Protected Status ("TPS"). Compl. ¶¶ 2, 5. Plaintiff traveled abroad while under TPS with the permission of DHS[1] (colloquially called advance parole). *Id.* at ¶ 8. The specific law that governs Plaintiff's particular circumstances, the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA"), requires that Plaintiff "shall be inspected and admitted in the same immigration status the alien had at the time of departure[,]" which in his case, was as a TPS beneficiary subject to a final order of removal. Pub. L. 102-232, § 304(c)(1)(A). Consequently, despite Plaintiff's travel, he is still under a final order of removal and not considered an arriving alien. As such, the immigration judge ("IJ"), and not U.S. Citizenship and Immigration Services ("USCIS"), has exclusive jurisdiction over his adjustment application. Thus the finality and exhaustion requirements of the APA are unsatisfied, and multiple jurisdictional stripping provisions of the INA preclude this Court from exercising jurisdiction over Plaintiff's claims.

Additionally, though Plaintiff brought the instant action in the District of Columbia, both he and Defendant reside in the Northern District of Texas and it was there that Plaintiff's denial decision was made. If this Court does not dismiss this action, it should transfer it to the Northern District of Texas.

---

[1] Though the advance parole provision, 8 U.S.C. § 1254a(f)(3), references the Attorney General, he has been replaced by the Secretary of Homeland Security pursuant to the Homeland Security Act function transferring provisions. 6 U.S.C. §§ 251, 557.

**ARGUMENT**

**I.   Plaintiff's Removal Order Remains Unexecuted, and Consequently, This Court does not have Jurisdiction over Plaintiff's Complaint.**

Plaintiff is subject to a final order of removal, and this Court lacks subject-matter jurisdiction to review that order. APA jurisdiction does not exist because Plaintiff has administrative remedies he can exercise. Moreover, Plaintiff's suit seeks to indirectly attack his removal order which is disallowed by various provisions of the INA.

**a.   Plaintiff has not Executed His Removal Order.**

Contrary to what he claims, Plaintiff did not execute his June 7, 1994 removal order when he traveled abroad on August, 11, 2016. As a beneficiary of TPS who traveled pursuant to a grant of advance parole, Compl. ¶¶ 7-8, Plaintiff's travel in 2016 was governed by MTINA, which speaks directly to his particular situation. As such, the canon of *lexi specialis* requires the application of that law governing his specific circumstances over those authorities which are either inapplicable or speak to more general circumstances. Because Plaintiff was: (1) a beneficiary of TPS; and (2) traveled pursuant to a grant of advance parole, MTINA applies. *See* 8 U.S.C. 1254a(f)(3); Pub. L. 102-232, 304(c) 105 Stat. 1733 (1991). Had Plaintiff either: (1) not applied and been granted TPS; or (2) not applied for, been granted, and traveled under a grant of advance parole, MTINA would not apply to him. As it is, however, Plaintiff has benefited from both TPS and advance parole. He cannot undue these facts for purposes of applying for lawful permanent resident status.[2]

---

[2] Had Plaintiff executed his removal order he would now be inadmissible pursuant to 8 U.S.C. § 1182(a)(9)(A)(ii)(II). *See* Mot. 13, n. 7. As it is, Defendant does not argue that Plaintiff is inadmissible pursuant to § 1182(a)(9)(A)(ii)(II) because Plaintiff did not execute his removal order and thus Plaintiff's discussion of *Chenery* is unnecessary. Opp. at 3, n. 3.

### i. Plaintiff Cites Authority which is Preempted by MTINA.

Plaintiff cites authority of general applicability in support of his position that he executed his removal order via his August 11, 2016 travel, rather than the specific law that governs his circumstances. Opp. at 1-4. First, Plaintiff cites 8 U.S.C. § 1101(g) which provides the general principle that an alien under an order of removal who leaves the United States is considered to have done so pursuant to that order. Opp. at 1, n.1. While this statute applies generally to aliens who travel and are under orders of removal, it does not speak to the more specific circumstances of a TPS beneficiary who travels under a grant of advance parole. MTINA does speak to these circumstances, however.

Plaintiff also cites to a federal regulation, 8 C.F.R. § 245.1(c)(8)(ii), in support of his position. Opp. at 3. Again, the regulation is one of general applicability rather than specifically addressing the nuance of Plaintiff's case, and in any event, is trumped by the federal statute on point. *See* MTINA. Lastly, Plaintiff cites to the Adjudicator's Field Manual § 54.2, which states that traveling pursuant to a grant of advance parole does not bar an alien from executing his removal order. Opp. at 4. This authority, though discussing a removable alien's travel while under advance parole, does not apply here, where Plaintiff traveled under advance parole *while a TPS beneficiary*. Moreover, MTINA as a statute would preempt the manual even if the manual were on point. As such, MTINA is the governing law in this case.

Had Plaintiff traveled without a grant of advance parole, then he could have executed his removal order. However, in such case, Plaintiff would have risked being excluded since he was under a final order of removal. *See Matter of Manohar Rao Arrabally*, 25 I. & N. Dec. 771, 777 (BIA 2012) ("Advance parole can be requested from abroad or at a port of entry, but typically it is sought by an alien who is already inside the United States and who wants to leave temporarily *but*

*fears that he will be excluded as an inadmissible alien upon return….*"). Plaintiff cloaked himself in the benefit of advance parole in order to ensure that he would be permitted to re-enter the United States. He did not however, execute his removal order.

Similarly, had Plaintiff traveled on advance parole yet not been a TPS beneficiary, then too, his removal order may have executed upon his departure. Yet Plaintiff has been a beneficiary of TPS since 2001, enjoying the benefit of being able to live and work in the United States without being subject to removal. 8 U.S.C. § 1254a(a)(1).

Plaintiff has enjoyed the benefits of both advance parole and TPS and cannot now ask that the law which speaks to his particular position as a recipient of both not apply to him.

      **ii.    Courts have found Removal Orders Remain Valid and Unexecuted When Aliens Travel as TPS Beneficiaries on Advance Parole.**

District Courts when faced with similar facts have found that removal orders remain valid and unexecuted. Three cases with strikingly similar facts are instructive here. *See Pineda v. Wolf,* Civil Action No. 19-11201-RGS at 3 (D. Mass. May, 13, 2020) (Mot., Ex. 3); *Del Carmen Espinosa v. Swacina*, No. 19-21315-CIV, 2019 WL 6682836, at *1 (S.D. Fla. Dec. 6, 2019); *Santa Maria v. McAleenan*, No. CV H-18-3996, 2019 WL 2120725, at *1 (S.D. Tex. May 15, 2019).

In *Pineda*, the plaintiff entered the United States without inspection and was eventually placed in removal proceedings, where an IJ administratively closed proceedings after determining the plaintiff was a beneficiary of TPS. *Pineda*, Civil Action No. 19-11201-RGS at 1. The plaintiff traveled under advance parole, and upon his return, applied to adjust status to that of a lawful permanent resident. *Id.* USCIS denied the application for lack of jurisdiction since the plaintiff did not qualify as an arriving alien and remained in removal proceedings, and the plaintiff filed suit claiming that USCIS had jurisdiction because he was an arriving alien. *Id.* at 2. The district court

found for USCIS on summary judgment, finding that MTINA governed the travel of the plaintiff and that he had not been converted into an arriving alien by virtue of his travel abroad. *Id.* at 2-3.

In *Espinosa*, the plaintiff entered in the United States without inspection in December 1992 and was ordered deported. *Espinosa*, 2019 WL 6682836 at *1. Subsequently, the plaintiff acquired TPS and traveled abroad while under TPS and received a grant of advance parole. *Id.* The plaintiff then filed a Form I-485, Adjustment of Status Application. USCIS denied the application for lack of jurisdiction and the plaintiff brought suit. *Id.* The district court dismissed the action, finding that the plaintiff was still subject to the removal order, that she was *not* an arriving alien, and as such, that only the IJ had jurisdiction over her adjustment application. *Id.* at *2.

Similar facts may be observed in *Santa Marie*, where the court again found that the plaintiff remained subject to an unexecuted order of removal. *Santa Maria*, 2019 WL 2120725, at *3. In *Santa Marie*, the plaintiff was under a final order of removal and had received TPS. *Id.* at *1. The plaintiff then traveled under a grant of advance parole, and subsequent to her return to the United States, she applied to adjust status to that of a lawful permanent resident with USCIS. *Id.* USCIS closed the application because it lacked jurisdiction because of Plaintiff's outstanding removal order. *Id.* at *2-3. Plaintiff filed suit *arguing that her removal order was executed when she traveled* and that she was an arriving alien. *Id.* at *3. The district court dismissed the case, finding the removal order still valid and thus the suit an improper indirect attack on the removal order. *Id.*

The aforementioned three cases deal with strikingly similar facts and support a similar result. In none of the cases were the plaintiffs found to have been converted into arriving aliens as a result of their departures. Likewise here, because Plaintiff traveled as a TPS beneficiary on advance parole, MTINA governs his travel and his removal order remains unexecuted and intact.

Plaintiff cites no case in support of the proposition that a TPS beneficiary who is subject to a final order of removal can execute his removal order when traveling under a grant of advance parole. His reliance on both *Nicusor-Remus v. Sessions*, 902 F.3d 895 (9th Cir. 2018) and *DiGrado v. Ashcroft*, 184 F. Supp. 2d 227 (N.D.N.Y. 2002) is misplaced. In both cases the plaintiffs executed their removal orders but in neither case was the plaintiff either a TPS beneficiary or traveling on advance parole. As a result, MTINA did not apply in either *Nicusor-Remus* or *DiGrado* and thus they are of no value here.

Since Plaintiff has not executed his removal order he must seek adjustment of status before an immigration judge, and thus has not exhausted his administrative remedies. Further, while under a removal order, Plaintiff's instant action stands as an indirect attack on the removal order and thus is barred by the INA. As a result, this Court does not have subject-matter jurisdiction.

**b. Plaintiff Cannot Establish a "Final Agency Action" as Required to Invoke the Court's APA Jurisdiction.**

Plaintiff cannot invoke APA jurisdiction because he has not exhausted his administrative remedies and therefore he cannot meet either the finality or exhaustion requirements necessary to bring an APA claim. *Meza v. Cuccinelli*, No. CV 19-1322 (CKK), 2020 WL 601888, *5 (D.D.C. Feb. 7, 2020) (internal citation omitted).

Plaintiff remains under a final *unexecuted* order of removal. As such Plaintiff may seek to adjust status before an IJ in removal proceedings, s*ee* 8 C.F.R. §§ 1240.1(a)(1)(ii), 1245.2(a)(1), and if the IJ denies adjustment, he may appeal to the BIA, *see* 8 C.F.R. §§ 1003.1(b), 1003.3(a), and if the BIA's decision is adverse, he may appeal (on limited grounds) to the relevant circuit court of appeals. *See* 8 U.S.C. § 1252(a)(5), (b)(2), (b)(9). Having these myriad steps before him, Plaintiff has not exhausted the administrative process.

Plaintiff's reliance on *Hosseini* is misplaced. Opp. at 2-3; *Hosseini v. Johnson*, 826 F.3d 354 (6th Cir. 2016). There the plaintiff was not in removal proceedings and thus could not move the immigration court to reopen his removal proceedings in order to adjust his status. *Hosseini*, 826 F.3d at 356.

Here, Plaintiff may move the IJ to reopen his removal proceedings and as such he has not exhausted his administrative remedies. Because he has not sought adjust his status via the administrative channels available to him, there is no final agency action and thus APA jurisdiction here would be premature and improper.

### c. The INA Strips the Court of Jurisdiction Over Plaintiff's Complaint.

Plaintiff is still subject to a final order of removal, and as such, the INA prohibits the exercise of jurisdiction over this action. In his response, Plaintiff argues the he executed his order of removal and thus none of the jurisdiction stripping provisions of § 1252 are applicable. Opp. at 3-5. However, as discussed above, this legal conclusion is incorrect and Plaintiff's removal order is still valid. Plaintiff's adjustment application, if granted by this Court would necessarily serve to vitiate Plaintiff's removal order. This suit therefore serves as an indirect attack on the removal order. Because the INA prohibits direct and indirect challenges of a removal order this Court is prohibited from granting jurisdiction. *See Chen v. Rodriguez,* 200 F. Supp. 3d 174, 181-82 (D.D.C.2016); 8 U.S.C. § 1252(a)(5), (b)(9), (g).

Plaintiff is still subject to a final removal order and is not an arriving alien. As a result, Plaintiff has not exhausted his administrative remedies as required by the APA and to the extent this legal action functions as an indirect challenge to his removability, this Court is prohibited by provisions of the INA from exercising jurisdiction. This Court should either dismiss the complaint

in its entirety pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction or pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[3]

**II.      Alternatively, The Court Should Transfer This Case to the Northern District of Texas.**

Even if it does not dismiss this action, the Court should transfer this case to the Northern District of Texas. Transfer is proper because Defendant and Plaintiff reside in the Northern District of Texas and the denial decision occurred there as well. Mot. at 20; *See* 28 U.S.C. § 1404(a). Plaintiff does not contest that this action may have been brought in the Northern District of Texas. *See* Opp.

Further, the Northern District of Texas is a more a convenient forum for this action. *M.M.M. v. Sessions*, 319 F. Supp. 3d 290, 294 (D.D.C. 2018) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Plaintiff is located in the Northern District of Texas, Compl. ¶ 2, and though he evidently prefers to bring this suit in the District of Columbia, that preference is given considerably less deference since it is not his home. *Aracely, R. v. Nielson,* 319 F. Supp. 3d 110, 128 (D.D.C. 2018). Plaintiff's Counsel argues that he will have to travel if the case is moved to the Northern District of Texas. Opp. at 14. However, Plaintiff's Counsel is located in Manhattan and will have to travel regardless of whether this action is in the District of Columbia or the Northern District of Texas. *Id.* at 16.

Again, Plaintiff resides in the Northern District of Texas. Compl. ¶ 2. Defendant resides in the Northern District of Texas. *See* Mot., Ex. 4 at 1. The denial decision giving rise to this action

---

[3] Plaintiff has conceded his APA rulemaking challenge since he did not oppose Defendant's motion to dismiss argument addressing it. Mot. at 10-11, 15-18. *See Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 69 (D.D.C. 2009) ("[w]here a plaintiff addresses some but not all arguments raised in a defendant's motion to dismiss, courts in this district may treat such arguments as conceded.").

occurred in the Northern District of Texas. *Id.* This suit should be litigated in the Northern District of Texas if it is not dismissed for lack of subject-matter jurisdiction or failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should grant USCIS's motion and dismiss the complaint in its entirety or, alternatively, transfer this case to the Northern District of Texas.

June 17, 2020                                                                  Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

C. FREDERICK SHEFFIELD
Senior Litigation Counsel

/S/ *William C. Bateman III*
WILLIAM C. BATEMAN III
Trial Attorney, Department of Justice
Office of Immigration Litigation – District Court Section
Tennessee Bar # 034139
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4067
william.c.bateman@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which sent notification of such filing to all counsel of record. I also certify that the foregoing document is being served on all parties and persons identified below via transmission of Notice of Electronic Filing generated by CM/ECF, which will automatically send email notification of such filing to the counsel of record.

*/s/ William C. Bateman III*
WILLIAM C. BATEMAN III