## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                      )
ADAN MELVIN GALINDO GOMEZ,            )
a/k/a ADAN GALINDO,                   )
                                      )
              Plaintiff,              )
                                      )
      v.                              )       Civil Action No. 19-3456 (ABJ)
                                      )
UNITED STATES CITIZENSHIP             )
AND IMMIGRATION SERVICES,             )
                                      )
              Defendant.              )
_____)
```

## <u>MEMORANDUM OPINION</u>

In 2018, plaintiff Adan Melvin Galindo Gomez, also known as Adan Galindo, applied to adjust his immigration status to that of a lawful permanent resident, and the United States Citizenship and Immigration Services ("USCIS") denied his request in July 2019. Pl.'s Am. Compl. [Dkt. # 10] ("First Am. Compl.") ¶¶ 11, 15. This lawsuit followed. Compl. [Dkt. # 1]. Plaintiff asks the Court to declare the denial of his request for readjustment to be unlawful and to compel USCIS to re-adjudicate his application. *Id*. at 6–9. Plaintiff also alleges that the agency failed to comply with the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., when it made changes made to its governing Policy Manual in December 2019. *Id*. at 7–8.

Defendant moved to dismiss the case for lack of subject matter jurisdiction, for failure to state a claim upon which relief may be granted, and for improper venue, *see* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss or Transfer [Dkt. # 15-1] ("Def's Mem."), and it asked in the alternative to transfer the case to the Northern District of Texas. *Id*. at 20–24. Meanwhile, plaintiff filed a motion seeking the entry of judgment in his favor on Counts One, Two, and Four.

Pl.'s First Mot. for Partial Summ. J. on Counts I, II and IV of First Am. Compl. [Dkt. # 13] ("First Mot. for Summ. J."); Pl.'s Renewed Mot. for Partial Summ. J. on Counts I, II and IV of First Am. Compl. [Dkt. # 19] ("Renewed Mot. for Summ. J.").   The Court will grant defendant's motion to dismiss Counts One, Two, and Four for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and deny plaintiff's motion with respect to those counts.   The Court will also dismiss Count Three for lack of jurisdiction because plaintiff does not have standing to challenge the change to the USCIS Policy Manual under the APA.   With that, the Court need not take up the venue question.

## BACKGROUND

Plaintiff is a citizen of El Salvador who resides in Arlington, Texas.   First Am. Compl. ¶ 2. In 1991, when he was 16, he entered the United States without inspection, and he has been subject to an order of deportation since 1994.   *Id*. ¶¶ 5–6; *see also* Ex. A to Pl.'s Mot. for Partial Summ. J. [Dkt. # 19-1] ("USCIS Decision") at 1.   In 2001, plaintiff applied for and was granted Temporary

Protected Status ("TPS"),[1] First Am. Compl. ¶ 7, and he was permitted to remain and work in the United States pursuant to 8 U.S.C. § 1254a(a)(1)(A)-(B).  Plaintiff has remained in the United States for the last nineteen years as a TPS beneficiary, except for one occasion when he left on "advance parole" approved by USCIS in 2016.  *See* Compl. ¶ 8–9.  Plaintiff departed the United States on August 11, 2016, and returned the same day.  *Id*. ¶ 9–10.

Approximately two years later, on June 28, 2018, plaintiff filed an Application to Register Permanent Residence or Adjust Status ("Form I-485") with USCIS, indicating that his last entry into the United States was on August 11, 2016.  *See* Compl. ¶ 11.  USCIS denied plaintiff's application on July 11, 2019.  Compl. ¶ 12; USCIS Decision.  The decision letter informed the plaintiff, ". . . you are ineligible as a matter of law to adjust status in the United States.  You have not established you are eligible for adjustment under INA 245(i).  Therefore, USCIS must deny your Form I-485."  USCIS Decision at 2.  The agency stated:

> You indicated on your Form I-485 that your last entry into the United States was on August 11, 2016, as a Temporary Protective Status (TPS) recipient parolee . . . . [A]n alien shall be inspected and admitted in the same

---

1       Pursuant to the Immigration and Nationality Act ("INA") of 1990, the Department of Homeland Security ("DHS") is vested with the authority to designate TPS to certain foreign nationals who are already in the United States and grant these individuals reprieve from undocumented status or deportation when they have fled natural disasters or certain dangerous political situations. 8 U.S.C. §§ 1254a(b)(1)(A)–(C), 1103, 557. In 2018, DHS began terminating TPS designations by nationality. *See, e.g.*, Termination of the Designation of El Salvador for Temporary Protected Status, 83 Fed. Reg. 2,654–60 (Jan. 18, 2018). As of November 2020, beneficiaries from a number of countries, including El Salvador, retain TPS through at least January 2021. *Temporary Protected Status*, USCIS, last updated Sept. 8, 2020, https://www.uscis.gov/humanitarian/ temporary-protected-status; *see also Ramos v. Nielson*, 336 F. Supp. 3d 1075 (N.D. Cal. 2018), vacated, *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020) (stating certain beneficiaries retain TPS while preliminary injunctions remain in effect); *Update on Ramos v. Nielsen*, USCIS, last updated Nov. 18, 2019, https://www.uscis.gov/humanitarian/update-on-ramos-v-nielsen. ("The secretary's determination to terminate TPS for El Salvador will take effect no earlier than 365 days from the issuance of any appellate mandate to the *Ramos* district court in order to allow for an orderly transition for affected TPS beneficiaries.").

immigration status the alien had at the time of departure. At the time of your departure, your last entry status inside the United States was without being inspected, admitted, or paroled. The record indicates that before your TPS entry, you entered the United States without inspection, admission, or parole.

*Id.* at 1.[2]  The letter also emphasized that plaintiff had been subject to a final order of deportation since June of 1994.  *Id.*

Plaintiff's initial complaint was filed on November 15, 2019, and in December 2019, USCIS added a footnote ("Footnote 19") to its Policy Manual governing the status of TPS beneficiaries who leave the country and return.[3]  Ex. 1 to Def's Mot. [Dkt. # 15-1] ("Policy Manual"); *see also* Ex. 2 to Def's Mot. [Dkt. # 15-1] ("Policy Alert").  On March 16, 2020, plaintiff amended his complaint to challenge the agency's revision of the Policy Manual without notice and comment rulemaking under section 553 of the APA.  First Am. Compl. ¶¶ 28–36.

The amended complaint includes the following claims:

Count One: The agency's decision denying plaintiff's application for adjustment of status was arbitrary and capricious and should be set aside;

Count Two: The agency's decision denying plaintiff's application for adjustment of status was not in accordance with the law and should be set aside;

Count Three: USCIS failed to conduct the required notice and comment rulemaking when it added what plaintiff refers to as a new legislative rule to its Policy Manual; and

Count Four: USCIS "unlawfully withheld and unreasonably delayed" a decision on plaintiff's application for adjustment of status.

First Am. Compl. ¶¶ 23–37.

---

2      Citing Pub. L. 102-232, § 304(c)(1)(a)(ii).

3      The Policy Manual is the "centralized online repository for USCIS's immigration policies" and "assists immigration officers in rendering decisions."  *About the Policy Manual*, USCIS (last updated Oct. 15, 2020), https://www.uscis.gov/policy-manual.

## LEGAL STANDARD

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  "Federal courts are courts of limited jurisdiction," and the law "presume[s] that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

### I.   Counts One, Two, and Four

Under the INA, there are three categories of aliens in the United States: "admitted," 8 U.S.C. § 1101(a)(13)(A); "paroled," 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5; and "inadmissible" (neither admitted nor paroled). 8 U.S.C. § 1182(a)(6)(A)(i). An alien may seek to adjust his status to that of a permanent resident if he falls into one of the first two categories. 8 U.S.C. § 1255(a); *see also* Immigrant Legal Res. Ctr., *Parole in Immigration Law* 1–3 (2016). Under a grant of authority from DHS, USCIS is permitted to perform this status adjustment, unless the alien is subject to deportation or removal proceedings. 8 C.F.R. §§ 245.2(a)(1); 1245.2(a)(1). If an alien is subject to such a proceeding, the agency's authority to adjust his status depends on whether the individual is considered to be an "arriving alien."

An "arriving alien" is defined as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry . . . . An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked. However, an arriving alien who was paroled into the United States before April 1, 1997, or who was paroled into

> the United States on or after April 1, 1997, pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, will not be treated, solely by reason of that grant of parole, as an arriving alien under [8 U.S.C. § 1225(b)(1)(A)(i)].

8 C.F.R. § 1.2.  This is the distinction of relevance to this case.

If an "arriving alien" is subject to deportation or removal proceedings, USCIS has exclusive jurisdiction over his adjustment application.  8 U.S.C. § 1255(a); 8 C.F.R. § 1245.2(a)(1).  But an immigration judge in the Department of Justice's Executive Office for Immigration Review ("EOIR") has exclusive jurisdiction over any adjustment application filed by a non-arriving alien.  8 C.F.R. § 1245.2(a)(1)(i).  If an alien's requested adjustment is denied by an immigration judge, he may appeal the decision to the Board of Immigration Appeals.  *See* 8 C.F.R. §§ 1003.1(b), 1003.3(a).  And an unsuccessful applicant may appeal an adverse decision of the BIA "on limited grounds[] to the relevant circuit court of appeals."  *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 306 (D.D.C. 2017); *see* 8 U.S.C. § 1252(b)(2).  That would be an applicant's sole avenue for relief; "[t]o the extent Congress decided to permit judicial review of a constitutional or legal issue bearing upon the denial of adjustment of status, it intended for the issue to be raised to the court of appeals *during removal proceedings*."  *Lee v. USCIS*, 592 F.3d 612, 620 (4th Cir. 2010) (emphasis in original).

Defendant has moved to dismiss the claims challenging the agency's denial of plaintiff's request for status adjustment.  It maintains that since he is not an "arriving alien," plaintiff's request should have been submitted to an immigration judge in the EOIR, in a process that would not be reviewable by this Court.  Def.'s Mem. at 7.  Defendant also argues that plaintiff must first exhaust his administrative remedies in order for there to be any final, and therefore reviewable, agency action in the instant case.  *Id*.

The Court agrees with defendant that plaintiff does not meet the definition of an "arriving alien," because he left the United States on August 11, 2011, under a grant of advance parole which he sought and obtained before he left.  *See* Ex. B to Pl.'s Mot. for Partial Summ. J. [Dkt. 13-5] ("Parole Authorization") at 1.  The Miscellaneous and Technical Immigration and Naturalization Amendments Act of 1991 ("MTINA") states that a TPS beneficiary who travels under advance parole approved by DHS returns to the United States with the same immigration status that was in effect when he left.  Pub. L. 102-232 § 304(c), 105 Stat. 1733, 1749, codified at 8 U.S.C. § 1101 *et seq*.  Furthermore, plaintiff remains subject to the deportation order issued in 1994, First Am. Compl. ¶ 6, notwithstanding the fact that he has remained in the United States as a TPS beneficiary.

Because a status adjustment application submitted by a non-arriving alien subject to deportation proceedings must be submitted to an immigration judge, *see* 8 C.F.R. §§ 1240.1(a)(1)(ii); 1245.2(a)(1)(i), and the denial of a request must be appealed to the Board of Immigration Appeals, *see* 8 C.F.R. §§ 1003.1(b), 1003.3(a), and then a circuit court,  *see* 8 U.S.C. § 1252(b)(2), this Court lacks the power to review plaintiff's status or grant the relief he seeks. *See Meza v. Cuccinelli*, 438 F. Supp. 3d 25, 32 (D.D.C. 2020) (dismissing on jurisdictional grounds an APA challenge to the USCIS's denial of a request to adjust the status of a non-arriving alien subject to deportation).

 The *Meza* court found the plaintiff's lawsuit to be premature since he had not yet exhausted his administrative remedies and received a final decision, *see id.* at 31, 34, and it pointed out that review could only take place in the Court of Appeals in any event.  *Se id.* at 32, 35.  In that case, as here, there was no ongoing removal proceeding underway, but the court pointed out that there were administrative remedies available since the plaintiff could move to reopen his removal proceedings and adjudicate his adjustment of status application in that forum.   *Id.* at 34.

8

In reaching its determination, the *Meza* court reviewed the applicable circuit court precedent and observed: "the courts that have considered this issue – including the D.C. Circuit – have found that in general, district courts lack subject matter jurisdiction to review the denial of an adjustment of status application if there is a removal proceeding through which the plaintiff may seek relief." *Id.* at 32, citing, *inter alia*, *Maalouf v. Wiemann*, No. 09-5394, 2010 WL 4156654, (D.C. Cir. May 17, 2010); *Randall v. Meese*, 854 F.2d 472, 480–81 (D.C. Cir. 1988).[4]

In *Maalouf*, the D.C. Circuit reviewed the dismissal of a challenged USCIS determination that plaintiff was ineligible for adjustment of status. 2010 WL 4156654, at *1. The court held the dismissal was proper because the case before the district court was "not ripe for judicial review while removal proceedings [were] pending against [the plaintiff]." *Id.*

The D.C. Circuit has long adhered to this "strand of the ripeness doctrine." *Randall*, 854 F.2d at 481. In that 1988 case, the plaintiff sought review of an adjustment status decision made by an Immigration and Naturalization Service ("INS") district director. *Id.* at 475–77. The court agreed it was right to dismiss the complaint at that preliminary stage as "judicial appraisal . . . is 'likely to stand on much surer footing' when the deportation proceedings have concluded, and in the interim, [the plaintiff] faces 'no irremediable adverse consequence'" because her appeal to the BIA was pending. 854 F.2d at 481 (internal citation omitted). The court emphasized that while "[i]ndividuals are entitled to a fair opportunity to be heard before adverse action is taken against them," *id.* at 480 n.15, such an opportunity is present if there is a "normal

---

4       *See also Jama v. DHS*, 760 F.3d 490, 497 (6th Cir. 2014); *Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010); *Howell v. INS*, 72 F.3d 288, 293 (2d Cir. 1995); *Massignani v. INS*, 438 F.2d 1276, 1277 (7th Cir. 1971); *Ahlijah v. Nielsen*, 755 F. App'x 290, 290 (4th Cir. 2019).

appeal route" assuring any "eventual court review will be enlightened by a full record, including the Board of Immigration Appeals' decision, and that this court avoids premature blockage of, or interference with, regulatory actions Congress has assigned to other government bodies." *Id*. at 482.

Plaintiff complains that USCIS erred when it denied his application to adjust his status on the grounds that he had not been inspected and "paroled" into the United States because, in fact, he was "paroled" when he returned from his 2016 trip. Plaintiff appears to misconstrue the letter; the agency commented that while he may have been paroled at the time of his entry in 2016, he was not at the time of his *last* entry, years *before* his 2016 departure. USCIS Decision at 1. While the agency was not particularly clear about this, it appears that it was addressing whether he met the definition of "arriving alien," as that was the operative question, rather than plaintiff's current parole status. And the agency did point out that plaintiff was subject to a deportation order. In other words, the facts that plaintiff highlights are irrelevant to the resolution of this case; the inquiry for purposes of the pending motion is whether plaintiff, who for many years has been subject to deportation proceedings, could be considered an "arriving alien" on August 11, 2016. That is what determines whether USCIS could take up his request and whether its denial could then be challenged in district court.[5] Furthermore, plaintiff is not left without recourse; administrative remedies, such as moving to reopen his removal proceedings, would allow him to

---

[5]     Plaintiff's confusion is somewhat understandable because the letter described plaintiff as "ineligible" for adjustment as a matter of law instead of casting its decision in terms of the availability of relief through USCIS. The dismissal of his claims here should not be interpreted as a finding with respect to whether he would be eligible if he made the same request to the appropriate authorities.

seek adjustment of his immigration status.  *See Meza*, 438 F. Supp. 3d at 34–35, citing 8 U.S.C.
§ 1229a.

For these reasons, defendant's motion to dismiss Counts One, Two, and Four for lack of
subject matter jurisdiction will be granted and plaintiff's partial motion for summary judgment on
these counts will be denied.

## II.      Count Three

Plaintiff has challenged the addition of Footnote 19 to the USCIS Policy Manual in
December 2019.  First Am. Compl. at 8–9.  Defendant argues that plaintiff does not have standing
to raise this issue because Footnote 19 was added five months after the denial of plaintiff's Form
I-485 adjustment application, and it goes on to maintain that the footnote is not the sort of
"legislative rule" that requires notice and comment rulemaking under the APA.  Def's Mem.
at 2–3.  Because the Court agrees that plaintiff lacks standing to bring this claim, it will not reach
the merits of whether Footnote 19 is a legislative or interpretive rule.

"To state a case or controversy under Article III, a plaintiff must establish standing."  *Ariz.
Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011), citing *Allen v.
Wright*, 468 U.S. 737, 751 (1984); *see also Lujan*, 504 U.S. at 560.  Standing is a necessary
predicate to any exercise of federal jurisdiction, and if it is lacking, then the dispute is not a proper
case or controversy under Article III, and federal courts have no subject-matter jurisdiction to
decide the case.  *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012); *see also La Botz
v. FEC*, 61 F. Supp. 3d 21, 27 (D.D.C. 2014), quoting *Haase v. Sessions*, 835 F.2d 902, 906
(D.C. Cir. 1987 ("The defect of standing is a defect in subject matter jurisdiction . . . properly
brought under [Federal] Rule [of Civil Procedure] 12(b)(1).").

To establish constitutional standing, a plaintiff must demonstrate that (1) he has suffered an "injury-in-fact" that is "concrete and particularized" and "actual or imminent"; (2) the injury is "fairly traceable" to the challenged action of the defendant; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan*, 504 U.S. at 561.

Plaintiff advances the position that because USCIS failed to undertake notice and comment rulemaking and publish changes in the Federal Register, First Am. Compl. ¶¶ 31–34, any action by a USCIS employee on his adjustment application traceable to Footnote 19 would be "invalid." *Id*. ¶ 36. But USCIS denied plaintiff's request to adjust his immigration status on July 11, 2019, five months *before* the change was made to the Policy Manual. *See* USCIS Decision at 1. Plaintiff has not alleged that he was injured by the subsequent change to the policy, or that striking down the revision to the Policy Manual would redress his injury: the denial of the change in immigration status by USCIS. *See* First Am. Compl. ¶ 22. Because the Court finds that plaintiff cannot demonstrate causation or redressability and lacks standing to bring a claim challenging the sufficiency of USCIS process under the APA, it will dismiss Count Three for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

Because plaintiff returned to the United States in August 2016 with the same status he held upon his departure, plaintiff is not an "arriving alien" under the INA. Therefore, as a TPS beneficiary subject to removal proceedings, plaintiff has not exhausted his administrative remedies for seeking an adjustment in immigration status by pressing his claim in the appropriate forum,

and this Court would lack jurisdiction to review a final determination in any event.  Plaintiff was required to present his request to the immigration court, and not USCIS, and this Court would lack jurisdiction to review the result of any determination on the request for adjusted status. Furthermore, plaintiff lacks standing to bring his APA claim.

Defendant's motion to dismiss the complaint in its entirety for lack of subject matter jurisdiction will be **GRANTED**, and plaintiff's motion for partial summary judgment will be **DENIED**.[6]  Because the Court lacks subject matter jurisdiction over plaintiff's case, defendant's alternative motion to transfer will be **DENIED AS MOOT**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 13, 2020

---

6      Given its rulings disposing of all of plaintiff's claims, the Court need not address defendant's argument that plaintiff's claim should be seen as an unreviewable collateral attack on the 1994 deportation order that has been stayed by virtue of his status as a TPS beneficiary.  Def.'s Mem. at 8–9.  And, that does not appear to be a fair characterization of plaintiff's complaint.